(27 Misc. Rep. 602.)

## HALL v. LAY et al.

(Supreme Court, Special Term, New York County. May, 1899.)

CORPORATIONS—ILLEGAL CANCELLATION OF STOCK BY DIRECTORS—INJUNCTION.
   A board of directors of a corporation, a short time before the annual meeting for the election of directors, attempted to cancel and declare void the entire stock of one of the stockholders and directors, which had stood in his name for nearly a year, without any question being made as to its ownership, on the ground merely that another director then claimed to be the owner of a large part of it. Such stock had the determining vote at the coming election. *Held*, that the directors would be enjoined from carrying such resolution into effect pending the legal determination of the rights of the contending parties.

Action by Omar D. Hall against William F. Lay and others. Motion to continue in force a temporary injunction. Granted.

Nathan, Leventritt & Perham, for plaintiff.
Sherrill & Lockwood, for defendants.

SCOTT, J. This action arises out of a controversy between two stockholders of a corporation as to the ownership of 375 shares of the capital stock; and, as it happens, the control of the company depends upon the ownership of those shares. They stand on the books of the company in the name of the plaintiff, who claims to be their lawful owner, and have so stood in his name since some time prior to June, 1898. It appears that when the company was organized the common stock was issued for certain patents and patent rights, and subsequently a portion of it was returned to the treasury of the company, to be used as working capital. A certain amount of preferred stock was also issued, and the company offered

commissions in treasury common stock for subscriptions to the preferred stock. There now stand in the name of the plaintiff altogether 449 shares, which he claims were acquired by him partly as commissions for obtaining subscriptions to preferred stock, partly in payment of salary, and partly by purchase. No question seems to be made as to his ownership of 74 shares, but one Andrew McLean, who was a subscriber to the preferred stock, claims that 375 of the shares standing in plaintiff's name should have been issued to him (McLean) as a bonus upon his subscription to the preferred stock. This claim the plaintiff controverts. The president of the company, being about to go abroad in December, 1897, signed certain certificates in blank, and says that it was understood between himself and plaintiff, who was secretary of the company, that a certificate for 375 shares should be made out in McLean's name, and given to him. A certificate was made out in McLean's name for 375 shares, but the plaintiff asserts that this was done by an error. At all events, the certificate was never delivered to McLean, and was repasted in the stock book, and marked "Canceled." The plaintiff then made out a certificate to himself for 449 shares, which included the 74 shares as to which no question seems to be made and the 375 shares now claimed by McLean. This occurred some time during the president's absence from the country, which extended from December, 1897, until June, 1898, so that for nearly a year the 375 shares of stock have stood in plaintiff's name, and until very recently no question seems to have been raised as to the ownership of them. In April of the present year one of the directors, named Tweddle, in examining the stock book, found, as he says, that a stock certificate (No. 14) had been cut out of the stock book, and that certificates 13 and 15 had been pasted together, apparently for the purpose of concealing the extraction of No. 14. Just what pertinency the absence of certificate No. 14 had to the dispute between plaintiff and McLean does not appear, since the certificate made out in McLean's name, but not issued to him, was numbered 19, and the certificate issued to plaintiff was numbered 22. The alleged mutilation of the stock book, however, was made the occasion for a meeting of the board of directors. The meeting was called, as the president swears, to request the plaintiff to explain the matter of the missing certificate, 14, and the pasting together of numbers 13 and 15. The only notice given to plaintiff, who was a director, either of the meeting itself or of the business intended to be transacted thereat, was that the president asked him to be present at the meeting, and told him that his absence could only be construed as cowardly, and might be construed as an admission of guilt. It does not appear that the meeting was called to pass upon the dispute between Mr. McLean and plaintiff as to the ownership of the 375 shares, or that plaintiff was notified that that matter would be taken up at the meeting. The meeting was held on April 27th, whereupon a most extraordinary resolution was proposed by McLean, and adopted by the board, as follows:

"Moved that all stock issued to O. D. Hall, issued in excess of what he is entitled to, and what he claims due him as commission for certain sale of stock to Andrew McLean, is hereby declared void, as the said Andrew McLean, in

buying stock, claims his purchase was made direct from the company or its agent, and any commissions going with the stock are due to said Andrew McLean, and not to O. D. Hall; and, furthermore, in view of the very unsatisfactory condition of the stock book, which shows that certificate number 14, and others, with the stubs, are missing and unaccounted for, the same having been in the custody of O. D. Hall; and it is further moved that all of O. D. Hall's stock is declared void, and not in good standing, until the said certificate number 14 and others are returned to the company or properly accounted for to the board of directors of this company."

By this resolution the board of directors, under the leadership of McLean, one of the parties to this controversy, constituted itself judge, jury, and executioner. It undertook to settle and determine out of hand the controversy between McLean and the plaintiff in favor of the former, and, to make assurance doubly sure, it undertook to cancel and annul the 74 shares as to the ownership of which by plaintiff no question is raised. That this attempted action was utterly illegal, void, and of no effect whatever is too plain for argument. The stock had stood in plaintiff's name for nearly a year, during which time plaintiff's title to it could readily have been tested by a proper action. Nothing was done, however, until a few days before the annual meeting at which a board of directors was to be elected. The stock standing in plaintiff's name constituted the controlling power, and McLean and his adherents in the board adopted this summary method of declaring the plaintiff's stock void, and thus, as they hoped, secured their own re-election as directors. They were properly prevented from carrying out their plan by the temporary injunction, and the motion to continue it during the pendency of the action must be granted, with $10 costs.

Motion granted, with $10 costs.